IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DERRICK KING,
    Plaintiff,

v.      CIVIL ACTION NO. 18-CV-5312

WARDEN J. QUIGLEY, *et al.*,
    Defendants.

## AMENDED MEMORANDUM

JONES, J.      JANUARY 25, 2019

*Pro se* Plaintiff Derrick King, who is currently incarcerated in the Berks County Jail System, filed this civil action pursuant to 42 U.S.C. § 1983 against Warden J. Quigley, Deputy Warden Smith, and ICC Jessica Collins. (ECF No. 1.) He has also filed two Motions for Leave to Proceed *In Forma Pauperis*. (ECF Nos. 4, 6.) For the reasons set forth below, the Court will grant King leave to proceed *in forma pauperis* and dismiss his Complaint with leave to amend.

### I. FACTS

Public dockets reflect that on December 6, 2018, King pled guilty to being a prohibited person in possession of a firearm and was sentenced to five (5) to ten (10) years of incarceration. *Commonwealth v. King*, Docket No. CP-06-CR-0004202-2017 (Berks Cty. Common Pleas). Although King is now a convicted inmate, he alleges that the events giving rise to his claims began on July 3, 2018, when he was still a pretrial detainee. (*See* Compl. at 2.)[1]

In his Complaint, King asserts that he is challenging his placement in disciplinary segregation. (*Id.* at 5.) He contends that he must spend over 300 days in disciplinary segregation

---

[1] The Court uses the pagination assigned to the Complaint by the CM/ECF docketing system.

"based [on] bogus misconducts written by officer[s] against [him]." (*Id.*) Attachments to King's Complaint indicate that during his incarceration, he has received several misconduct citations for offenses such as threats, contraband, refusing orders, and destruction of property. (*Id.* at 19-23.) On October 25, 2018, the Institutional Classification Committee, consisting of Collins, Lt. Sharp, and S. Swartley, held a 30-day hearing regarding King's placement. (*Id.* at 17.) King asked "if he could be transferred to another jail since he got charges here." (*Id.*) That request was denied, and his status was not changed. (*Id.*) Another attachment suggests that the next 30-day hearing was scheduled to take place on November 21, 2018. (*Id.* at 18.) King takes issue with the fact that as a disciplinary segregation inmate, he does not receive hot meals, cannot use the phone, and cannot receive visits from his family. (*Id.* at 5.) He also alleges that he receives "less shower time than population inmates." (*Id.*)

King claims that he received "hole time" after being in a fist fight with another inmate. (*Id.*) During the fight, Officer Matthew Lutz was "hit in the face," and King was charged with aggravated assault. (*Id.*) King alleges that this charge "brought on more campaign harassment/retaliation by staff." (*Id.*) He has asked Warden Quigley and Deputy Warden Smith for either a behavior contract or a transfer to another jail, and his requests have been denied. (*Id.*) He made the same requests of Collins, a member of the Institutional Classification Committee, as well as Lt. Sharp, the custody supervisor, and was denied. (*Id.*) King alleges that Quigley and Smith also "continue to allow [him] to be harassed by [staff]." (*Id.*)

## II. STANDARD OF REVIEW

The Court will grant King leave to proceed *in forma pauperis* because it appears that he is not capable of paying the fees to commence this civil action.[2] Accordingly, King's Complaint is subject to 28 U.S.C. § 1915(e)(2)(B)(ii), which requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "[M]ere conclusory statements do not suffice." *Id.* As King is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III. DISCUSSION

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). As discussed below, the Complaint fails to state a claim for relief at this time.

### A. Claims Regarding Placement in Disciplinary Segregation

King first appears to suggest that Quigley, Smith, and Collins are responsible for his placement and continued confinement in disciplinary segregation, in violation of his due process

---

[2] However, because King is a prisoner, he will be obligated to pay the $350.00 filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

rights under the Fourteenth Amendment. As noted above, King alleges that his placement in disciplinary segregation was "based [on] bogus misconducts." (Compl. at 5.)

The United States Court of Appeals for the Third Circuit has noted that, "[g]enerally, prisons may sanction a pretrial detainee for misconduct that he commits while awaiting trial, as long as it is not a punishment for the 'underlying crime of which he stands accused.'" *Kanu v. Lindsey*, 739 F. App'x 111, 116 (3d Cir. 2018) (quoting *Rapier v. Harris*, 172 F.3d 999, 1003-06 (7th Cir. 1999)). With respect to pretrial detainees, "the imposition of disciplinary segregation for violation of prison rules and regulations cannot be imposed without providing the due process protections set forth in *Wolff v. McDonnell*, 418 U.S. 539 . . . (1974)." *Kanu*, 739 F. App'x at 116. Such protections "include the right to receive written notice of the charges at least 24 hours before the hearing, the opportunity to present witnesses and documentary evidence, and a written statement of the reasons for the disciplinary action taken and the supporting evidence." *Id.* (citing *Wolff*, 418 U.S. at 563-66). Moreover, while "the filing of a fraudulent misconduct report and related disciplinary sanctions do not without more violate due process," *Seville v. Martinez*, 130 F. App'x 549, 551 (3d Cir. 2005) (per curiam), "[d]ue process is satisfied where an inmate is afforded an opportunity to be heard and to defend against the allegedly false misconduct reports," *Thomas v. McCoy*, 467 F. App'x 94, 97 (3d Cir. 2012) (per curiam).

The Complaint, as pled, fails to set forth a due process claim regarding King's placement in disciplinary segregation. King cannot maintain a due process claim solely on the basis that he believes the misconducts issued against him were false. *Seville*, 130 F. App'x at 551. Nowhere in the Complaint does King allege that he was not provided the protections set forth above.[3]

---

[3] Indeed, Deputy Warden Smith's response to one of King's grievances, which is attached to the Complaint, suggests that the disciplinary citations "were reviewed by a hearing officer." (Compl. at 12.)

4

Thus, King cannot maintain a procedural due process claim regarding his placement in disciplinary segregation.

## B. Claims Regarding Conditions in Disciplinary Segregation

King also takes issue with the fact that as a disciplinary segregation inmate, he does not receive hot meals, cannot use the phone, and cannot receive visits from his family. (*Id.*) He also alleges that he receives "less shower time than population inmates." (*Id.*) Because it appears that King was both a pretrial detainee and a convicted inmate while subjected to these conditions, the Court will analyze his claims under both the Eighth and Fourteenth Amendments. *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005) (noting that the Eighth Amendment governs claims brought by convicted inmates challenging their conditions of confinement, while the Due Process Clause of the Fourteenth Amendment governs claims brought by pretrial detainees).

To establish an Eighth Amendment violation based on the conditions of confinement, a prisoner must establish that prison officials' acts or omissions denied him "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). He must also establish that the defendants acted with deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). To establish a basis for a Fourteenth Amendment violation, a prisoner must establish that the conditions of confinement amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 538 (1979). That inquiry generally turns on whether the conditions have a purpose other than punishment and whether the conditions are excessive in relation to that purpose. *See id.* at 538-39; *Hubbard*, 399 F.3d at 158.

The conditions of which King complains, however, are not constitutional violations under either Amendment. *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (no due

5

process right to unfettered visitation); *Tapp v. Proto*, 404 F. App'x 563, 567 (3d Cir. 2010) (per curiam) (finding no constitutional violation under both the Eighth and Fourteenth Amendments where the prisoner was denied access to shower facilities two days each week); *Strauss v. Ray*, 221 F.3d 1336, 2000 WL 875690, at *2 (6th Cir. June 19, 2000) (concluding that being served cold meals does not amount to a constitutional deprivation under the Eighth Amendment); *Williams v. Delaware Cty. Bd. of Prison Inspectors*, No. 17-CV-4348, 2018 WL 3235788, at *10 (E.D. Pa. July 2, 2018) (noting that, under the Eighth Amendment, being deprived phone calls "with no other facts surrounding [the] alleged deprivation[] [is] not [a] 'sufficiently serious deprivation[]' resulting in the denial of 'the minimal civilized measure of life's necessities'"); *Randall v. Cty. of Berks, Pa.*, No. 14-5091, 2015 WL 5027542, at *17 (E.D. Pa. Aug. 24, 2015) (noting that "a pretrial detainee does not have unfettered telephone access"); *Duran v. Merline*, 923 F. Supp. 2d 702, 720 (D.N.J. 2013) (concluding, under the Fourteenth Amendment, that "[b]eing served cold meals for a 45-day period . . . is not 'punishment' under *Bell*"). Nothing in the Complaint suggests that these conditions either amounted to punishment or deprived King of any basic human need such as food, medical care, sanitation, or security. Accordingly, his claims regarding the conditions of confinement will be dismissed.

### C. Claims Regarding Denial of Transfer

King also suggests that Quigley, Smith, and Collins have violated his due process rights by refusing to transfer him to another county jail. King, however, has no due process right to be transferred or incarcerated in a particular institution. *See Olim v. Wakinekona*, 461 U.S. 238, 251 (1983). Accordingly, his due process claim regarding the denial of a transfer will be dismissed.

### D. Claims Regarding Allowance of Harassment and Retaliation

Finally, King suggests that Quigley and Smith have violated his rights by allowing staff members to continue to harass him. (Compl. at 5.) "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 135 S. Ct. 2042 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.*

Although King suggests that Quigley and Smith allowed the harassment and retaliation to continue, he has not plausibly alleged that the staff members engaged in unconstitutional conduct. As the Court has previously explained to King, "[a]llegations of verbal abuse or threats, unaccompanied by injury or damage, are not cognizable under § 1983, regardless of whether the inmate is a pretrial detainee or sentenced prisoner." *Brown v. Hamilton Police Dep't*, No. CIV. A. 13-260 MAS, 2013 WL 3189040, at *2 (D.N.J. June 21, 2013), *aff'd sub nom., Brown v. Hamilton Twp. Police Dep't Mercer Cty., N.J.*, 547 F. App'x 96 (3d Cir. 2013); *Maclean v. Secor*, 876 F. Supp. 695, 698-99 (E.D. Pa. 1995) ("It is well established that verbal harassment or threats will not . . . without some reinforcing act accompanying them, state a

7

constitutional claim."). Moreover, nothing in the Complaint suggests that staff members retaliated against King for engaging in constitutionally protected conduct. *See Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017). Therefore, because King has not plausibly alleged that the subordinate staff members engaged in unconstitutional conduct, he cannot maintain his claims that Quigley and Smith failed to stop such conduct at this time.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant King leave to proceed *in forma pauperis* and dismiss his Complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). However, the Court will give King an opportunity to file an amended complaint in the event he can state a plausible claim for relief against an appropriate defendant or defendants. A separate Order follows.

**BY THE COURT:**

**C. DARNELL JONES, II, J.**