# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DERRICK KING,
 Plaintiff,

v.      CIVIL ACTION NO. 18-CV-5312

WARDEN J. QUIGLEY, *et al.*,
 Defendants.

## MEMORANDUM

JONES, J.             JANUARY 31, 2019

On December 10, 2018, *pro se* Plaintiff Derrick King, who is currently incarcerated in the Berks County Jail System, filed this civil action pursuant to 42 U.S.C. § 1983 against Warden J. Quigley, Deputy Warden Smith, and ICC Jessica Collins. (ECF No. 1.) He also filed two Motions for Leave to Proceed *In Forma Pauperis*. (ECF Nos. 4, 6.) By Memorandum and Order entered on January 11, 2019, the Court granted King leave to proceed *in forma pauperis* and dismissed his Complaint. (ECF Nos. 8, 9.) Specifically, the Court noted that: (1) King had failed to state a due process claim regarding his placement in disciplinary segregation; (2) King had not stated a claim under both the Eighth and Fourteenth Amendments regarding the conditions in disciplinary segregation; (3) King had no due process right to be transferred or incarcerated in a particular institution; and (4) King had failed to plausibly allege that Warden Quigley and Deputy Warden Smith had failed to stop subordinate staff members from retaliating against him for engaging in constitutionally protected conduct. (ECF No. 8 at 3-8.) The Court gave King leave to amend in the event he can set forth a plausible claim for relief.

The Court received King's Amended Complaint on January 28, 2019. (ECF No. 12.) King again sues Warden Quigley, Deputy Warden Smith, and ICC Jessica Collins. He has also

filed a Motion for a Preliminary Injunction. (ECF No. 13.) For the following reasons, the Court will dismiss the Amended Complaint and provide King one final opportunity to amend.

## I. SUMMARY OF KING'S OTHER LITIGATION IN THIS COURT

To understand the context for the Court's analysis of King's Amended Complaint, the Court provides the following summary of King's other litigation history in this Court.

### A. *King v. Doherty*, Civ. A. No. 16-5962

On November 16, 2016, King filed a Motion for Leave to Proceed *In Forma Pauperis* and Complaint, raising various claims regarding the conditions of confinement during his 2016 incarceration in the Berks County Jail System. Specifically, King alleged that Officer Doherty had harassed him and written a false disciplinary charge, leading to his placement in disciplinary segregation. King also alleged that he lost his mattress and was forced to eat food loaf for thirty (30) days. By Order entered on January 18, 2018, the Court denied King's Motion for Leave to Proceed *In Forma Pauperis* without prejudice because he had failed to submit a copy of his inmate account statement. By Order entered on March 14, 2018, the Court dismissed this action without prejudice for failure to prosecute because King had failed to either pay the $400.00 filing fee or submit a copy of his prisoner account statement.

### B. *King v. Smith*, Civ. A. No. 16-6649

On December 27, 2016, King filed a Motion for Leave to Proceed *In Forma Pauperis* and Complaint, again raising claims regarding the conditions of confinement in the Berks County Jail System. Specifically, King alleged that Officer Dew had falsely charged him with making threats toward officers and that he was forced to be in a cell with horrible plumbing and feces on the ceiling. King also contended that he slipped and fell and never received medical treatment. By Orders entered on January 5, 2017 and February 13, 2017, the Court directed King to either

2

submit $400.00 to the Clerk of Court or, if he wished to proceed *in forma pauperis*, submit a copy of his inmate account statement. King did not do so. Accordingly, by Order entered on January 18, 2018, the Court dismissed this action for failure to prosecute.

### C. *King v. Quigley*, Civ. A. No. 18-2758

On June 28, 2018, King filed a Motion for Leave to Proceed *In Forma Pauperis* and a Complaint against Warden Quigley, Deputy Warden Smith, Captain Castro, and Sgt. Tossone. Shortly thereafter, he filed an Amended Complaint against those individuals. By Memorandum and Order entered on August 24, 2018, the Court granted King leave to proceed *in forma pauperis* and dismissed his Complaint and Amended Complaint. Specifically, the Court noted that: (1) King's speculative allegations were insufficient to impose liability against Warden Quigley and Deputy Warden Smith; (2) King had not stated a claim regarding finding bugs in his food on two separate occasions; (3) King could not maintain a claim against Captain Castro based upon his involvement in the grievance process; (4) the practice of requiring inmates to eat in a cell containing a toilet is not a constitutional violation; and (5) King had failed to allege a plausible claim concerning the drinking water and the medical problems he allegedly experienced from drinking it. The Court granted King leave to file a second amended complaint.

King filed his Second Amended Complaint on September 18, 2018, claiming that Captain Castro failed to adequately supervise the kitchen trays because he allowed insects and such to get into the food. King also alleged that the chlorine was added to the drinking water, causing him to experience medical issues. By Order entered on September 28, 2018, the Court directed service of King's Complaint. Proceedings in this matter are still pending.

### D. *King v. Quigley*, Civ. A. No. 18-3420

On August 13, 2018, King filed a Motion for Leave to Proceed *In Forma Pauperis* and a Complaint against Warden Quigley, Deputy Warden Smith, and C/Os Matthew Luppold and Kieser. By Memorandum and Order entered on September 28, 2018, the Court granted King leave to proceed *in forma pauperis*, dismissed his claims against Warden Quigley and Deputy Warden Smith because he could not maintain a claim against them based on their involvement in the grievance process, dismissed his verbal harassment claims against C/Os Luppold and Kieser, and allowed his retaliation claims against C/Os Luppold and Kieser to go forward. Proceedings in this matter are still pending.

### E. *King v. Vanbilliard*, Civ. A. No. 18-3962

On September 13, 2018, King filed a Complaint against Hearing Examiner Daniel Vanbilliard and Officer Stephen Dew. He subsequently filed a Motion for Leave to Proceed *In Forma Pauperis*. In his Complaint, King alleged that Vanbilliard had violated his due process rights during a disciplinary hearing by denying him the ability to call witnesses, and that the disciplinary charges were based on false reports by Officer Dew. By Order entered on September 25, 2018, the Court granted King leave to proceed *in forma pauperis* and directed service of his Complaint. Proceedings in this matter are still pending.

### F. *King v. Gonzlas*, Civ. A. No. 18-5172

On November 30, 2019, King filed a Complaint against Officer Gonzlas, alleging that he had retaliated against him for filing lawsuits. Shortly thereafter, King filed a Motion for Leave to Proceed *In Forma Pauperis*. By Order entered on January 29, 2019, the Court granted King leave to proceed *in forma pauperis* and directed service of his Complaint. Proceedings in this matter are still pending.

### G. *King v. Samuels*, Civ. A. No. 19-200

On January 14, 2019, King filed a Complaint against Nicole Samuels, a mental health worker, and Sgt. Brandt (misspelled "Brandit"), alleging that they retaliated against him for filing lawsuits. Shortly thereafter, King filed a Motion for Leave to Proceed *In Forma Pauperis*. Proceedings in this matter are pending.

### H. *King et al. v. Berks Cty. Jail System Supervisor Officials*, Civ. A. No. 19-389

On January 25, 2019, King, as well as several other inmates in the Berks County Jail System, filed a Complaint against several Berks County Jail System officials, alleging that they had been subjected to unconstitutional strip searches. They also alleged that they, as disciplinary segregation inmates, had been subjected to unconstitutional conditions and were prohibited from practicing their religion. Proceedings in this matter are pending.

## II. SUMMARY OF THE AMENDED COMPLAINT

Public dockets reflect that on December 6, 2018, King was sentenced to five (5) to ten (10) years of incarceration after being found guilty of being a prohibited person in possession of a firearm. *Commonwealth v. King*, Docket No. CP-06-CR-0004202-2017 (Berks Cty. Common Pleas). Public dockets also reflect that on October 18, 2018, King was charged with one count of aggravated assault and two counts of simple assault. *Commonwealth v. King*, Docket No. CP-06-CR-0005008-2018 (Berks Cty. Common Pleas). Proceedings in that matter are still pending. *Id* According to King, the assault charges arose from an incident with a correctional officer. (Am. Compl. at 5.)[1] Although King is now a convicted inmate, he alleges that the events giving rise to his claims began on July 3, 2018, when he was still a pretrial detainee. (*Id* )

---

[1] The Court uses the pagination assigned to the Amended Complaint by the CM/ECF docketing system.

5

In his Amended Complaint, King challenges his placement in disciplinary segregation, alleging that it affected his sentence because he was unable to conduct legal research and "present a substantial defense." (*Id.*) He alleges that his inability to conduct legal research violates his equal protection rights, as inmates in general population are permitted to conduct legal research. (*Id.*) King contends that he has been in disciplinary segregation for over 300 days. (*Id.* at 6.) He takes issue with the fact that, as a disciplinary segregation inmate, he has been subjected to mattress restrictions, "cold substitute meals," and being forced to clean urine thrown from the top tier to the bottom tier "without any protection supplies, such as gloves." (*Id.*) King also alleges that as an indigent inmate, he has not been able to make legal phone calls. (*Id.* at 5.)

King claims that he received "hole time" after being in a fist fight with another inmate. (*Id.*) Apparently, an officer was hit during the fight, and King was charged with the pending aggravated assault charge. (*Id.*) King alleges that because of this he has experienced "excessive use of campaign/harassment by the victim Matthew Lutz['s] co-workers." (*Id.*) He has asked for either a behavior contract or a transfer to another jail, and his requests have been denied. (*Id.* at 5-6.) King alleges that the ICC team, including Jessica Collins, and the Warden and Deputy Warden are "responsible for his confinement" and that they have "full knowledge of and acquiesced in [their] subordinate[s'] unconstitutional conduct." (*Id.* at 6.)

As relief, King seeks damages. (*Id.* at 5.) He also requests that his "preliminary injunction motion get granted." (*Id.*) In that Motion, King requests to be transferred to another institution "until final disposition of the criminal accusation." (Mot. for Prelim. Inj. at 1.) He also seeks to "be held in no contact with victim Matthew Lutz nor near the facility of the Defendant's occupation." (*Id.*)

## III. STANDARD OF REVIEW

As noted above, the Court previously granted King leave to proceed *in forma pauperis*. Accordingly, his Amended Complaint is subject to 28 U.S.C. § 1915(e)(2)(B)(ii), which requires the Court to dismiss the Amended Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "[M]ere conclusory statements do not suffice." *Id.* As King is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## IV. DISCUSSION

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). As discussed below, the Amended Complaint fails to state a claim for relief at this time.

### A. Claims Regarding Placement in Disciplinary Segregation

King again appears to suggest that Quigley, Smith, and Collins are responsible for his placement and continued confinement in disciplinary segregation, in violation of his due process rights under the Fourteenth Amendment. The Amended Complaint suggests that King was first placed into disciplinary segregation when he was a pretrial detainee.

The United States Court of Appeals for the Third Circuit has noted that, "[g]enerally, prisons may sanction a pretrial detainee for misconduct that he commits while awaiting trial, as

7

long as it is not a punishment for the 'underlying crime of which he stands accused.'" *Kanu v. Lindsey*, 739 F. App'x 111, 116 (3d Cir. 2018) (quoting *Rapier v. Harris*, 172 F.3d 999, 1003-06 (7th Cir. 1999)). With respect to pretrial detainees, "the imposition of disciplinary segregation for violation of prison rules and regulations cannot be imposed without providing the due process protections set forth in *Wolff v. McDonnell*, 418 U.S. 539 . . . (1974)." *Kanu*, 739 F. App'x at 116. Such protections "include the right to receive written notice of the charges at least 24 hours before the hearing, the opportunity to present witnesses and documentary evidence, and a written statement of the reasons for the disciplinary action taken and the supporting evidence." *Id.* (citing *Wolff*, 418 U.S. at 563-66).

The Amended Complaint, as pled, fails to set forth a due process claim against Quigley, Smith, and Collins regarding King's placement in disciplinary segregation. Nothing in the Amended Complaint suggests that they were personally responsible for King's placement in segregation, whether due to their own conduct or deliberate indifference to known deficiencies in a policy that violated King's rights. *See Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 320 (3d Cir. 2014), *reversed on other grounds, Taylor v Barkes*, 135 S. Ct. 2042 (2015). Rather, King mentions that "hearing officer Daniel Vanbilliard [did] not read or [give him] his rights [during] the disciplinary segregation hearing." (Am. Compl. at 6.) As mentioned above, however, King is proceeding on a due process claim against Vanbilliard in Civil Action No. 18-3962. Accordingly, King's due process claim against Quigley, Smith, and Collins regarding his placement in disciplinary segregation will be dismissed.

### B. Claims Regarding Access to Legal Research

Next, King appears to suggest that his placement in disciplinary segregation violated his right to access the courts under the First Amendment because he was unable to conduct legal

research. (Am. Compl. at 5.) King suggests that his inability to conduct legal research "affected [his] sentence" and that he was unable to "present a substantial defense." (*Id.*) King also alleges that his equal protection rights were violated because general population inmates can conduct legal research. (*Id.*)

"A prisoner making an access-to-the-courts claim is required to show that the denial of access caused actual injury." *Jackson v. Whalen*, 568 F. App'x 85, 87 (3d Cir. 2014) (per curiam) (quoting *Lewis*, 518 U.S. at 350). In other words, a prisoner claiming that he was denied access to the courts must allege an injury traceable to the conditions of which he complains. *Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (per curiam) (affirming dismissal of denial of access claims where plaintiff failed to tie alleged deficiencies in library to harm in underlying action). In general, an actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). "[T]he underlying cause of action, . . . is an element that must be described in the complaint." *Id.* Furthermore, the right to access the courts may be satisfied if the plaintiff has an attorney. *Diaz*, 532 F. App'x at 63 (citing *Bounds v. Smith*, 430 U.S. 817, 831 (1977) and *Peterkin v. Jeffes*, 855 F.2d 1021, 1042 (3d Cir. 1988)); *see also Prater v. City of Phila.*, 542 F. App'x 135, 137 n.4 (3d Cir. 2013) (per curiam). Here, King does not plausibly describe any injury suffered because of not having access to legal research. Moreover, public dockets reflect that King was represented by counsel on the charge for which he was convicted and is currently represented by counsel for his pending charge. Thus, his right to access the court is satisfied for purposes of those proceedings. Accordingly, the Court will dismiss King's access to the courts claim.

With respect to King's equal protection claim, the Equal Protection Clause directs that all similarly situated individuals be treated alike. *See City of Cleburne v Cleburne Living Ctr*, 473 U.S. 432, 439 (1985). Here, because prisoners do not constitute a protected class for Fourteenth Amendment purposes, *see Myrie v Comm'r, N.J. Dep't of Corr.*, 267 F.3d 251, 263 (3d Cir. 2001), King's claim is governed by rational basis review. King, however, cannot meet this standard because disciplinary segregation inmates are not similarly situated to general population inmates. *See Wilson v. Jin*, 698 F. App'x 667, 672 (3d Cir. 2017) (per curiam) (noting that inmates in a Restricted Housing Unit are not similarly situated to general population inmates); *Boyd v. Anderson*, 265 F. Supp. 2d 952, 966 (N.D. Ind. 2003) (noting that "inmates confined in a disciplinary segregation unit are not similarly situated with general population inmates"). Accordingly, King's equal protection claim will be dismissed.

### C. Claims Regarding Denial of Legal Phone Calls

King also vaguely alleges that he was denied legal phone calls because he is an indigent inmate. (Am. Compl. at 5.) The Court notes that pretrial detainees do have a right of access to the courts, including telephone calls to counsel, under the First, Sixth, and Fourteenth Amendments. *See Randall v. Cty. of Berks*, No. 14-5091, 2015 WL 5027542, at *17 (E.D. Pa. Aug. 24, 2015). However, the detainee's right to telephone access is "subject to rational limitations in the face of legitimate security interests of the penal institution." *Almahdi v. Ashcroft*, 310 F. App'x 519, 522 (3d Cir. 2009) (quoting *Strandberg v. City of Helena*, 791 F.2d 744, 747 (9th Cir. 1986)). Therefore "a pretrial detainee does not have unfettered telephone access, even to communicate with legal counsel." *Randall*, 2015 WL 5027542, at *17 (citing *Guido v US Marshals*, Civ. A. No. 08-1096, 2008 WL 1902742, at *8 (D.N.J. Apr. 28, 2008)). Moreover, "inmates do not have a constitutional right to any particular means of accessing the

10

courts or counsel such as unlimited telephone use." *Id.* Accordingly, "if an inmate has another method of communicating 'freely and privately with counsel, it is less likely that the restrictions on telephone use will rise to the level of a constitutional violation.'" *Id.* (quoting *Aruano v. Main*, Civ. No. 073867, 2010 WL 2710564, at *8 (D.N.J. July 7, 2010)).

Here, nothing in the Amended Complaint suggests that Quigley, Smith, and Collins were personally responsible for denying King legal phone calls. *See Barkes*, 766 F.3d at 320. Moreover, King has not alleged how the denial of legal phone calls injured him or that he did not have another method of communicating with counsel. Accordingly, King has not stated a plausible claim regarding the denial of legal phone calls at this time.

### D. Claims Regarding Conditions in Disciplinary Segregation

King also takes issue with various conditions in disciplinary segregation. He again alleges that he does not receive hot meals. (Am. Compl. at 6.) He also suggests that he has been subjected to "mattress restrictions." (*Id.*) Finally, King contends that he is forced to clean the urine thrown from the top tier to the bottom tier "without any protection supplies, such as gloves." (*Id.*) Because it appears that King was both a pretrial detainee and a convicted inmate while subjected to these conditions, the Court will analyze his claims under both the Eighth and Fourteenth Amendments. *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005) (noting that the Eighth Amendment governs claims brought by convicted inmates challenging their conditions of confinement, while the Due Process Clause of the Fourteenth Amendment governs claims brought by pretrial detainees).

To establish an Eighth Amendment violation based on the conditions of confinement, a prisoner must establish that prison officials' acts or omissions denied him "the minimal civilized measure of life's necessities." *Rhodes v Chapman*, 452 U.S. 337, 347 (1981). He must also

11

establish that the defendants acted with deliberate indifference. *Farmer v Brennan*, 511 U.S. 825, 835 (1994). To establish a basis for a Fourteenth Amendment violation, a prisoner must establish that the conditions of confinement amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 538 (1979). That inquiry generally turns on whether the conditions have a purpose other than punishment and whether the conditions are excessive in relation to that purpose. *See id* at 538-39; *Hubbard*, 399 F.3d at 158.

The Court has previously informed King that receiving cold meals is not a constitutional violation under either Amendment. *Strauss v Ray*, 221 F.3d 1336, 2000 WL 875690, at *2 (6th Cir. June 19, 2000) (concluding that being served cold meals does not amount to a constitutional deprivation under the Eighth Amendment); *Duran v. Merline*, 923 F. Supp. 2d 702, 720 (D.N.J. 2013) (concluding, under the Fourteenth Amendment, that "[b]eing served cold meals for a 45-day period . . . is not 'punishment' under *Bell*"). Again, nothing in the Amended Complaint suggests that receiving cold meals either amounted to punishment or deprived King of any basic human need such as food, medical care, sanitation, or security.

King also vaguely suggests that he has been subject to "mattress restrictions" when he has "never used [his] mattress other than [for] it[s] purpose of use." (Am. Compl. at 6.) King does not indicate how long he was forced to be without a mattress. The denial of a mattress for a short period of time, however, does not constitute a violation under either Amendment. *See Freeman v Miller*, 615 F. App'x 72, 77-78 (3d Cir. 2015) (concluding that the denial of a mattress for seven (7) days did not violate the Eighth Amendment); *Adderly v Ferrier*, 419 F. App'x 135, 139 (3d Cir. 2011) (per curiam) (same); *Coleman v. Hodges*, Civil Action No. 18-1152, 2018 WL 6618459, at *6-7 (W.D. Pa. Nov. 30, 2018) (citing cases concluding that the denial of a mattress for a short period of time did not violate the Fourteenth Amendment), *Report*

*and Recommendation adopted by* 2018 WL 6618408 (W.D. Pa. Dec. 18, 2018). Nothing in the Amended Complaint suggests that the mattress restrictions either amounted to punishment or deprived King of any basic human need such as food, medical care, sanitation, or security.

Finally, King contends that he is forced to clean the urine thrown from the top tier to the bottom tier "without any protection supplies, such as gloves." (Am. Compl. at 6.) However, nothing in the Complaint suggests that the denial of gloves amounted to punishment or deprived King of any basic human need such as food, medical care, sanitation, or security. *See Cook v. Long*, No. 1:05CV211 HEA, 2009 WL 1578924, at *3-4 (E.D. Mo. June 3, 2009) (concluding that denial of gloves for cleaning was not a violation of the Eighth Amendment).

### E. Claims Regarding Denial of Transfer and Behavior Contract

King again suggests that Quigley, Smith, and Collins have violated his due process rights by refusing to transfer him to another institution. As the Court previously explained to King, he has no due process right to be transferred or incarcerated in a particular institution. *See Olim v. Wakinekona*, 461 U.S. 238, 251 (1983). Accordingly, his due process claim regarding the denial of a transfer will be dismissed. Moreover, the Court has not located any authority to suggest that King has a right to be placed on a behavior contract in lieu of placement in disciplinary segregation. Accordingly, his due process claim regarding the denial of a behavior contract will also be dismissed.

### F. Claims Regarding Allowance of Harassment and Retaliation

Finally, King again suggests that Quigley, Smith, and Collins have violated his rights by allowing staff members to continue to harass him and retaliate against him. (Am. Compl. at 6.) "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the

13

Constitution." *Iqbal*, 556 U.S. at 676. There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 135 S. Ct. 2042 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.*

Here, King suggests that Quigley, Smith, and Collins "directed other[s] to violate [his rights], or, as the [people] in charge, [have] had full knowledge of and acquiesced in the subordinate's unconstitutional conduct." (Am. Compl. at 6.) These generalized, speculative allegations are simply insufficient for imposing liability against the Warden and Deputy Warden.

## V. MOTION FOR PRELIMINARY INJUNCTION

As noted above, King has filed a Motion for Preliminary Injunction, seeking for this Court to transfer him to another institution until his pending criminal matter is resolved and so he can have no contact with Matthew Lutz, the victim. (Mot. for Prelim. Inj. at 1.) A plaintiff seeking a preliminary injunction "must establish that (A) [he is] likely to succeed on the merits of [his] claims, (B) [he is] likely to suffer irreparable harm without relief, (C) the balance of harms favors [him], and (D) relief is in the public interest." *Issa v. Sch. Dist. of Lancaster*, 847 F.3d 1231, 131 (3d Cir. 2017) (citing *Ferring Pharm., Inc. v Watson Pharm., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014)). At this time, King has not demonstrated that he is likely to succeed on the

14

merits of his claims, particularly because, as discussed below, he has no right to a transfer. Accordingly, the Court will deny his Motion for Preliminary Injunction.

## VI. CONCLUSION

For the foregoing reasons, the Court will dismiss King's Amended Complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). However, the Court will give King an opportunity to file a second amended complaint in the event he can state a plausible claim for relief against an appropriate defendant or defendants regarding his claims concerning denial of legal phone calls, mattress restrictions, and the Defendants' actions regarding the allowance of retaliation against him. Any second amended complaint should not reassert claims raised in King's other lawsuits, whether those claims are pending or have been dismissed. King's Motion for Preliminary Injunction will be denied at this time. A separate Order follows.

BY THE COURT:

_____
C. DARNELL JONES, II, J.